## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**

FEB 2 2 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) Civil No. |
| v. | ) |
| NATIONAL SALES GROUP, a California corporation, | ) |
| I LIFE MARKETING LLC, a California limited liability company, also d/b/a EXECUTIVE SALES NETWORK and CERTIFIED SALES JOBS, | ) |
| ANTHONY J. NEWTON, and | ) |
| JEREMY S. COOLEY, | ) |
| Defendants. | ) |

11-cv-01230
Judge Ronald A. Guzman
Magistrate Judge Jeffrey T. Gilbert

### COMPLAINT FOR PERMANENT INJUNCTION
### AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

6.    Defendant National Sales Group ("NSG") is a California corporation with its principal place of business at 114 East Haley Street, Santa Barbara, California 93101. NSG transacts or has transacted business in this district and throughout the United States.

7.    Defendant I Life Marketing LLC ("I Life"), also doing business as Executive Sales Network, and as Certified Sales Jobs, is a California limited liability company with its principal place of business at 114 East Haley Street, Santa Barbara, California 93101. I Life transacts or has transacted business in this district and throughout the United States.

8.    Defendant Anthony Newton is the president of Defendant NSG and a manager of I Life. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NSG and I Life, including the acts and practices set forth in this Complaint. Defendant Newton, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.    Defendant Jeremy S. Cooley is a manager of I Life. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NSG and I Life, including the acts and practices set forth in this Complaint. Defendant Cooley, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.    Defendants NSG and I Life (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other

law violations alleged below. Defendants have conducted the business practices described below through interrelated companies that have common ownership, managers, business functions, and office locations; and that commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Newton and Cooley have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

11.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

12.     Since at least 2005, Defendants have advertised, marketed, promoted, offered for sale, and sold purported employment opportunities to consumers nationwide. Defendants advertise in various media throughout the country, including on the Internet. Defendants also are telemarketers who initiate outbound telephone calls to consumers throughout the United States to induce the purchase of Defendants' goods or services.

### Advertisements

13.     Defendants have placed job advertisements in newspapers and on websites such as Careerbuilder.com. In general, the advertisements announce the availability of jobs of a particular type, in a particular location, with wages of a specified amount. A typical ad includes a job title such as "Pharmaceutical Sales and Medical Device Sales" and lists a city, base pay

Case: 1:11-cv-01230 Document #: 1 Filed: 02/22/11 Page 5 of 14 PageID #:5

(typically $40,000 - $60,000 per year or higher), and a commission amount (typically $30,000 or $50,000). The ad then invites jobseekers to call "human resources" at a toll-free telephone number. Defendants Newton and Cooley have been involved in the placement of, and payment for, such advertisements.

14.     In addition, Defendants call consumers who have posted resumes on various job-related websites seeking employment. When consumers are not available, Defendants leave messages indicating that they are calling about an employment position and provide a toll-free number for consumers to call.

15.     In truth, in most or all instances when Defendants place job advertisements, or leave consumers messages about employment positions, Defendants are not themselves hiring and have no affiliation with companies that are hiring. In fact, Defendants often or always make these solicitations without any authority from any prospective employer and without even knowing whether the job openings, as described by Defendants, actually exist or are already filled.

16.     Defendants also solicit consumers through their website www.nationalsalesgroup.com. On their site, Defendants tout themselves as a "full service staffing and recruitment company" that has "joined forces with hundreds of Fortune 1000, regional and local companies to link the largest and most effective sales pool in the country." Defendants claim to specialize in finding consumers jobs in sales, marketing, and management across six industries: automotive, information technology, pharmaceuticals, insurance, telecommunications, retail, and business-to-business. Defendants further represent that their goal is to connect consumers to "[o]pportunities with lasting six figure incomes and beyond."

Page 5 of 14

17.     Defendants' website offers three levels of membership: 1) free registration; 2) web account registration ($29 plus shipping and handling); and 3) premier account registration ($88 plus shipping and handling). Defendants represent that 10% of job seekers at the free-registration membership level are contacted by employers; 35% are contacted at the web-account level; and 55% are contacted at the premier membership level. Defendants' website directs consumers to call a toll-free telephone number to contact an NSG representative to register for an account.

### Sales Calls

18.     The consumers who call Defendants' toll-free telephone numbers, and the consumers whom Defendants call, speak to Defendants' live sales representatives, who represent, expressly or by implication, that Defendants will find consumers employment in exchange for a fee.

19.     Defendants tell consumers that numerous jobs are available in their local area and that Defendants can help consumers obtain interviews in as few as two weeks and a job in as little as one month. Defendants represent that employers have authorized Defendants to recruit prospective employees to fill these job openings. Defendants tell consumers that they can expect to earn six-figure salaries.

20.     Once consumers pay the fee and gain access to Defendants' website, the website directs consumers to enter background information about themselves. After doing so, based on Defendants' representations, consumers expect to view job listings for companies associated with Defendants. Instead, Defendants provide consumers at most with job postings, essentially help wanted ads, originally posted elsewhere by third parties. Most or all of these job postings

are available through other sources free of charge. In all or nearly all instances, the job postings require consumers to apply to third parties directly for employment.

21.     In numerous instances, after paying Defendants' fees, consumers find that Defendants have no affiliation with companies that are actually hiring, and no authority from those companies to place job advertisements or recruit prospective employees. Consumers also often find that Defendants have misrepresented the type and number of jobs available in their local areas. With few if any exceptions, consumers who pay Defendants' fees do not obtain jobs through Defendants' services.

### Unauthorized Charges

22.     In numerous instances, Defendants have charged consumers without their authorization or have charged consumers substantially more than the amount authorized by consumers. Among other things, Defendants have charged many consumers fees totaling about $97.90 when the consumers only agreed to pay fees totaling about $29. The higher amount charged to consumers reflects fees for additional products or services that, in many instances, were not disclosed to consumers in the sales call or were specifically declined by consumers. Defendants also have charged many consumers a recurring monthly fee, typically $13.71, without the consumers' authorization.

### VIOLATIONS OF THE FTC ACT

23.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

24.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under

Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT ONE

25.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of employment opportunities, Defendants, directly or indirectly, have represented, expressly or by implication, that Defendants are themselves hiring consumers to perform work, are hiring on behalf of others, or are recruiters affiliated with others who are hiring.

26.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 25 of this Complaint, Defendants are not themselves hiring consumers to perform work, are not hiring on behalf of others, and are not recruiters affiliated with others who are hiring.

27.     Therefore, Defendants' representations, as set forth in Paragraph 25 of this Complaint, are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

28.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of employment opportunities, Defendants, directly or indirectly, have represented, expressly or by implication, that one or more jobs are currently available through Defendants in consumers' local areas.

29.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 28 of this Complaint, one or more jobs were not currently available through Defendants in consumers' local areas.

30.    Therefore, Defendants' representation, as set forth above in Paragraph 28 of this Complaint, is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

31.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of employment opportunities, Defendants, directly or indirectly, have represented, expressly or by implication, that paying a fee to Defendants for access to jobs makes consumers likely to earn substantial income.

32.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 31 of this Complaint, paying a fee to Defendants for access to jobs does not make consumers likely to earn substantial income.

33.    Therefore, Defendants' representation, as set forth in Paragraph 31 of this Complaint, is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FOUR

34.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of employment opportunities, Defendants have caused charges to be submitted for payment to the credit and debit cards of consumers who did not authorize such charges.

35.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

36.     Therefore, Defendants' practices as described in Paragraph 32 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## THE TELEMARKETING SALES RULE

37.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, resulting in the FTC's promulgation of the Telemarketing Sales Rule, 16 C.F.R. Part 310.

38.     Defendants are "sellers" or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone calls" to consumers, as those terms are defined in the TSR. 16 C.F.R. §§ 310.2(v), (aa), (cc), and (dd).

39.     The TSR prohibits telemarketers and sellers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

40.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, that they are affiliated with, or endorsed or sponsored by, any person or government entity. 16 C.F.R. § 310.3(a)(2)(vii).

41.     The TSR prohibits sellers and telemarketers from making any false or misleading statement to induce any person to pay for goods or services. 16 C.F.R. § 310.3(a)(4).

42.    The TSR provides that it is an abusive telemarketing act or practice for a seller or telemarketer to cause "billing information to be submitted for payment, directly or indirectly, without the express informed consent" of the consumer. 16 C.F.R. § 310.4(a)(7).

43.    The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

    A.    The identity of the seller;

    B.    That the purpose of the call is to sell goods or services; and

    C.    The nature of the goods or services.

16 C.F.R. § 310.4(d)(1), (2), and (3).

44.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT FIVE

45.    In numerous instances, in the course of telemarketing goods and services, Defendants have misrepresented, directly or by implication, that:

    A.    Defendants are themselves hiring consumers to perform work, are hiring on behalf of others, or are recruiters affiliated with others who are hiring;

    B.    one or more jobs are currently available through Defendants in consumers' local areas; and

    C.    paying a fee to Defendants for access to jobs makes consumers likely to earn substantial income.

46.     Defendants' acts or practices, as described in Paragraph 45 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii), 310.3(a)(2)(vii), or 310.3(a)(4).

## COUNT SIX

47.     In numerous instances, in the course of telemarketing goods and services, Defendants have failed to disclose promptly, and in a clear and conspicuous manner to the person receiving the call:

      A.    The identity of the seller;

      B.    That the purpose of the call is to sell goods or services; or

      C.    The nature of the goods or services.

48.     Defendants' acts or practices, as described in Paragraph 47 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(d).

## COUNT SEVEN

49.     In numerous instances, in the course of telemarketing goods and services, Defendants have caused billing information to be submitted for payment without the express informed consent of the consumer.

50.     Defendants' act or practice, as described in Paragraph 49 above, is an abusive telemarketing practice that violates the TSR, 16 C.F.R. § 310.4(a)(7).

## CONSUMER INJURY

51.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this

Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

52. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

53. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

### PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act and the

TSR by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to,

rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

D.     Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,

WILLARD K. TOM
General Counsel

DATED: February 22, 2011

ROZINA/C. BHIMANI
GUY G. WARD
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION